UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA
Criminal No.: 22-076 (KMM/TNL)

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) |
| Plaintiff, | ) ) ) |
| v. | ) ) PLEA AGREEMENT ) AND SENTENCING ) STIPULATIONS |
| (1) SHEVIRIO KAVIRION CHILDS-YOUNG, a/k/a "Rio," | ) ) ) |
| Defendant. | ) ) |

The United States of America and Shevirio Kavirion Childs-Young (hereinafter referred to as the "Defendant") agree to resolve this case on the terms and conditions that follow. This plea agreement binds only the Defendant and the United States Attorney's Office for the District of Minnesota. This agreement does not bind any other United States Attorney's Office or any other federal or state agency.

1. **Charges.** The Defendant agrees to plead guilty to Count 1 of the Superseding Indictment, which charges the Defendant with conspiracy to use, carry, and brandish firearms during and in relation to crimes of violence, in violation of 18 U.S.C. § 924(o). The Defendant fully understands the nature and elements of the crime with which he has been charged. At the time of sentencing, the United States agrees to move to dismiss the remaining counts of the Superseding Indictment against the Defendant.

2. **Factual Basis.** The Defendant is pleading guilty because he is in fact guilty of Count 1 of the Superseding Indictment. In pleading guilty, the Defendant admits the following facts and that those facts establish his guilt beyond a reasonable doubt and constitute relevant conduct pursuant to the United States Sentencing Guidelines:

From at least in or about September of 2021, and through at least in or about October of 2021, the Defendant entered into an agreement with others to commit a series of carjackings and robberies in Minneapolis, Minnesota. Pursuant to the agreement, during that timeframe members of the conspiracy lured Uber and Lyft commercial drivers to particular locations to pick-up or drop-off passengers. When the victim-driver arrived, members of the conspiracy would brandish firearms and demand the cell phone and wallet of the victim-driver. Members of the conspiracy would typically force the victim-driver at gunpoint to unlock his or her cell phone, and to provide passcodes that allowed members of the conspiracy to transfer money by phone applications (such as Cash App) from the victim-driver's account to the accounts of members of the conspiracy.

Members of the conspiracy would typically strike or pistol-whip the victim-driver, either to intimidate the victim-driver, or to force faster compliance with demands. Several victims experienced bodily injury. Members of the conspiracy would also threaten to kill the victim-driver if he or

she did not comply.

Members of the conspiracy would typically carjack the victim-driver, taking his or her car at gunpoint.

The loss amount in these robberies, to include vehicles, cell phones, and money taken was at least $20,000.

Members of the conspiracy, including individuals who took part in armed robberies, included juveniles under the age of 18.

These robberies prevented the Uber and Lyft drivers from continuing to engage in commercial transportation of passengers.

The Defendant agrees that, as part of the conspiracy, where cars were taken, members of the conspiracy used force, violence, and intimidation with the intent to cause bodily harm in order to obtain vehicles from victim-drivers. The defendant agrees that the vehicles taken in carjackings were shipped, transported or received in interstate or foreign commerce.

The Defendant agrees that, as part of the conspiracy, members of the conspiracy intentionally obtained property from victim-drivers without the drivers' consent, that members of the conspiracy did so by wrongful use of violence, and that as a result of these actions, interstate commerce was delayed, obstructed, and affected.

The Defendant therefore admits and agrees that from at least in or about September of 2021, and through at least in or about October of 2021, he and

others agreed to use, carry, and brandish firearms during and in relation to carjacking and interference with commerce by robbery, both of which are crimes of violence that may be prosecuted in federal court. The Defendant admits he knew of this agreement and conspiracy, and knowingly and voluntarily participated in it.

3. **Waiver of Pretrial Motions**. The Defendant understands and agrees that he has certain rights to file pre-trial motions in this case. As part of the plea agreement, and based upon concessions of the United States within this plea agreement, the Defendant knowingly, willingly, and voluntarily gives up the right to file any additional pre-trial motions in this case. The defendant agrees that, by pleading guilty, he is withdrawing any motions previously filed.

4. **Waiver of Constitutional Trial Rights.** The Defendant understands that he has the right to go to trial. At trial, the Defendant would be presumed innocent, have the right to trial by jury or, with the consent of the United States and of the Court, to trial by the Court, the right to the assistance of counsel, the right to confront and cross-examine adverse witnesses, the right to subpoena witnesses to testify for the defense, the right to testify and present evidence, and the right to be protected from compelled self-incrimination. The Defendant understands that he has the right to an attorney at every stage of these proceedings and, if necessary, one will be appointed to represent him. The Defendant understands that he has the right to persist in a plea of not

guilty and, if he does so, he would have the right to a public and speedy trial. By pleading guilty, the Defendant knowingly, willingly, and voluntarily waives each of these trial rights, except the right to counsel. The Defendant understands that a guilty plea is a complete and final admission of guilt and, if the Court accepts the guilty plea, the Court will adjudge the Defendant guilty without a trial.

5. **Additional Consequences**. The Defendant understands that as a result of his conviction, he could experience additional consequences, such as the loss of the right to carry firearms, the right to vote, and the right to hold public office.

6. **Statutory Penalties.** The parties agree that Count 1 of the Superseding Indictment carries statutory penalties of:

    a.     a maximum term of imprisonment of 20 years;

    b.     a supervised release term of up to three years;

    c.     a fine of up to $250,000;

    d.     assessment to the Defendant of the costs of prosecution as authorized by 28 U.S.C. §§ 1918(b) and 1920; and

    e.     a mandatory special assessment of $100 under 18 U.S.C. § 3013(a)(2)(A).

7. **Revocation of Supervised Release.** The Defendant understands that if the Defendant were to violate any supervised release condition while on supervised release, the Court could revoke the Defendant's

supervised release, and the Defendant could be sentenced to an additional term of imprisonment up to the statutory maximum set forth in 18 U.S.C. § 3583(e)(3). *See* U.S.S.G. §§ 7B1.4, 7B1.5. The Defendant also understands that as part of any revocation, the Court may include a requirement that the Defendant be placed on an additional term of supervised release after imprisonment, as set forth in 18 U.S.C. § 3583(h).

8. **Guideline Calculations.** The parties acknowledge that the Defendant will be sentenced in accordance with 18 U.S.C. § 3551, *et seq.* Nothing in this plea agreement should be construed to limit the parties from presenting any and all relevant evidence to the Court at sentencing. The parties also acknowledge that the Court will consider the United States Sentencing Guidelines in determining the appropriate sentence and stipulate to the following guideline calculations:

> a. <u>Base Offense Level.</u> The parties agree that U.S.S.G. § 2K2.1 applies to violations of 18 U.S.C. § 924(o). That guideline section states that where defendants use firearms in connection with a conspiracy, the provisions of U.S.S.G. § 2X1.1 apply if the resulting offense level is greater than that determined in § 2K2.1. U.S.S.G. § 2K2.1(c)(1)(A). Pursuant to U.S.S.G. § 2X1.1(a), the base offense level and adjustments from the substantive offense are to be applied in conspiracy cases. The substantive offenses—carjacking and interference with commerce by robbery—are determined by U.S.S.G. § 2B3.1. The parties agree that, because the resulting offense level is greater under §§ 2X1.1 and 2B3.1 than it would be under § 2K2.1, the guideline provisions of §§ 2X1.1 and 2B3.1 apply to Count 1 of the Superseding Indictment. The parties agree that the base offense level is therefore **20**. U.S.S.G. § 2B3.1(a).

b.  <u>Specific Offense Characteristics</u>. The parties agree that, because a firearm was used in the offense, the base offense level should be increased by **6** levels. U.S.S.G. § 2B3.1(b)(2)(B). The United States contends that, because the victims sustained serious bodily injury, the base offense level should be increased by **4** levels. U.S.S.G. § 2B3.1(b)(3)(B). The Defendant reserves the right to argue at sentencing that, because victims sustained bodily injury, but not serious bodily injury, the base offense level should be increased by **2** levels. U.S.S.G. § 2B3.1(b)(3)(A). The parties agree that, because the offense involved carjacking, the base offense level should be increased by **2** levels. U.S.S.G. § 2B3.1(b)(5). The parties anticipate that, because the loss was between $20,000 and $95,000, the base offense level should be increased by an additional **1** level. U.S.S.G. § 2B3.1(b)(7)(B). The parties agree that a full accounting of loss will be reflected in the Presentence Investigation Report (PSR). The parties agree that, if the loss amount calculated in the PSR exceeds $95,000, the parties will be free to argue for an increase of **2** levels. U.S.S.G. § 2B3.1(b)(7)(C). The parties agree that no other specific offense characteristics apply.[1]

c.  <u>Chapter 3 Adjustments</u>. The parties agree that, because a person less than 18 years of age was used to commit the offense, the base offense level should be increased by **2** levels. U.S.S.G. § 3B1.4. The parties agree that, other than credit for acceptance of responsibility, no other Chapter 3 adjustments apply.

d.  <u>Acceptance of Responsibility</u>. The United States agrees to recommend that the Defendant receive a **2**-level reduction for acceptance of responsibility pursuant to U.S.S.G. § 3E1.1(a). As the Defendant has timely notified the United States of his intention to enter a plea of guilty, the United States agrees to recommend that the Defendant receive an additional **1**-level reduction pursuant to U.S.S.G. § 3E1.1(b). Whether these reductions will be imposed shall be determined by the Court in its discretion. However, the Defendant understands and agrees that the United States' recommendations are conditioned upon the

---

[1] The parties agree that, because members of the conspiracy completed all acts necessary on their part for the successful completion of the substantive offenses, a 3-level downward adjustment is not appropriate. U.S.S.G. § 2X1.1(b)(2).

7

following: (1) the Defendant testifies truthfully during the change of plea and sentencing hearings; (2) the Defendant provides full, complete and truthful information to the United States Probation Office in the pre-sentence investigation; and (3) the Defendant engages in no conduct inconsistent with acceptance of responsibility before the time of sentencing. Nothing in this agreement limits the right of the United States, pursuant to U.S.S.G. § 3E1.1, or § 3C1.1, or both, to seek denial of a reduction for acceptance of responsibility or an enhancement for obstruction of justice should the Defendant engage in any conduct inconsistent with acceptance of responsibility, including moving to withdraw his guilty plea after it is entered.

e.   Criminal History Category. The parties believe that, at the time of sentencing, the Defendant will fall into Criminal History Category **IV**. U.S.S.G. § 4A1.1. This does not constitute a stipulation, but a belief based on an assessment of the information currently known. The Defendant's actual criminal history and related status will be determined by the Court based on the information presented in the Presentence Report and by the parties at the time of sentencing. The Defendant understands that if the presentence investigation reveals any prior adult or juvenile sentence which should be included within his criminal history under the U.S. Sentencing Guidelines, the Defendant will be sentenced based on his true criminal history category, and he will not be permitted to withdraw from this Plea Agreement. U.S.S.G. § 4A1.1.

f.   Proposed Status-Points Guidelines Amendments to U.S.S.G. § 4A1.1. The Court must apply the sentencing Guidelines Manual in effect as of the date of sentencing. U.S.S.G. § 1B1.11(a). The U.S. Sentencing Commission recently proposed Amendments to the Guidelines that would, in relevant part, provide that a defendant does not receive additional criminal history points for having committed the instant offense while on probation if the defendant otherwise has less than seven criminal history points under Chapter 4, Part A. U.S. Sentencing Comm'n, Amendments to the Sentencing Guidelines at 81–85 (Apr. 27, 2023) (unofficial compilation) (amendments to § 4A1.1). The Amendments are scheduled to take effect on November 1, 2023, and have been published for retroactivity consideration.

8

The parties believe that the defendant may qualify for a reduction in criminal history points under the Amendment described above and, if so, would then fall into Criminal History Category III (i.e., he would have six criminal history points versus eight criminal history points).

However, if the Defendant is sentenced before the Amendments take effect, and if the Court determines that the Amendment above would in fact impact his criminal history category, the defendant may seek a variance from his otherwise-applicable Guidelines range based on the proposed Amendment. The United States agrees to support such a variance and to ask the Court to sentence the Defendant as if the new U.S.S.G. § 4A1.1 had taken effect on the express condition that the Defendant agrees that he will not later seek, by any means, including through a motion pursuant to 18 U.S.C. § 3582(c), a further reduced sentence on the basis that the new § 4A1.1 was inapplicable at the time his sentence was imposed, even if the proposed version of § 4A1.1 becomes effective or is made retroactive.

This paragraph 7.f. will not apply if, between now and the date of sentencing, the proposed amendments are rejected by proper authority or withdrawn by the U.S. Sentencing Commission.

g.    Guideline Range.

In the view of the United States, the adjusted offense level is **32 (20 + 6 + 4 + 2 + 1 + 2 - 3)**. If the criminal history category is **IV**, the Sentencing Guideline range for Count 1 is **168–210** months' imprisonment. If the criminal history category is **III**, the Sentencing Guideline range for Count 1 is **151-188** months' imprisonment.

In the view of the Defendant, the adjusted offense level is **30 (20 + 6 + 2 + 2 + 1 + 2 - 3)**. If the criminal history category is **IV**, the Sentencing Guideline range for Count 1 is **135–168** months' imprisonment. If the criminal history category is **III**, the Sentencing Guideline range for Count 1 is **121-151** months' imprisonment.

  h. <u>Fine</u>. If the adjusted offense level is **32**, the applicable fine range is **$35,000** to **$250,000**. If the adjusted offense level is **30**, the applicable fine range is **$30,000** to **$250,000**. U.S.S.G. § 5E1.2(c)(3).

  i. <u>Supervised Release</u>. The Sentencing Guidelines call for a term of supervised release of between one and three years for Count 1. U.S.S.G. § 5D1.2(a)(2).

9. **<u>Discretion of the Court</u>**. The foregoing stipulations are binding on the parties, but do not bind the Court. The parties understand that the Sentencing Guidelines are advisory and their application is a matter that falls solely within the Court's discretion. The Court may make its own determination regarding the applicable guideline factors and the applicable criminal history category. The Court may also depart from the applicable Guidelines. If the Court determines that the applicable guideline calculations or the Defendant's criminal history category are different from that stated above, such a determination shall not provide a basis for the parties to withdraw from this agreement, and the Defendant will be sentenced pursuant to the Court's determinations.

10. **<u>Agreements as to Sentencing Recommendation</u>**. The parties are free to recommend whatever sentence they deem appropriate. The parties reserve the right to make a motion for departures from the applicable Guidelines range pursuant to 18 U.S.C. § 3553(a), to oppose any such motion made by the opposing party, and to argue for a sentence outside the applicable

10

Guidelines range. If the Court does not accept the sentencing recommendation of the parties, the Defendant will have no right to withdraw his guilty plea.

11. **Special Assessments**. The Sentencing Guidelines require payment of a special assessment in the amount of $100.00 for each felony count of which the Defendant is convicted. U.S.S.G. § 5E1.3. The Defendant agrees that the special assessment is due and payable at the time of sentencing.

12. **Restitution Agreement**.

The Defendant understands and agrees that the Mandatory Victim Restitution Act, 18 U.S.C. § 3663A, applies and that the Court is required to order the Defendant to make restitution to the victims of his crimes. The Defendant agrees that he owes restitution and agrees that the Court shall order him to pay restitution, joint and severally with co-defendants Javeyon Demario Tate, William Charles Saffold, and Eric Harrell Knight, in the following amounts:

- $2,750 to A.A. (Counts 2–3 of the Superseding Indictment);
- $200 to L.D.W. (Counts 4–6 of the Superseding Indictment);
- $810 to A.O.A. (Counts 7–9 of the Superseding Indictment);
- $2,900 to B.A.B. (Counts 10–12 of the Superseding Indictment);
- $740 to A.H.A. (Counts 16–17 of the Superseding Indictment);
- $520 to Y.D. (Counts 18–19 of the Superseding Indictment);
- $500 to G.A.T. (Counts 20–21 of the Superseding Indictment);

- $1,500 to I.S. (Counts 22–23 of the Superseding Indictment);

- $1,500 to M.A.S. (Counts 24–26 of the Superseding Indictment); and

- $100 to F.H.A. (Counts 27–28 of the Superseding Indictment).

13. **Forfeiture**. The Defendant agrees to forfeit to the United States, pursuant to Title 18, United States Code, Section 924(d)(1) and Title 28, United States Code, Section 2461(c), his rights and interests in any firearm with accessories and any ammunition involved in the Defendant's violation of 18 U.S.C. § 924(o), including specifically but not limited to a Polymer80 model PMF 9mm semiautomatic pistol bearing serial number CA25976, together with ammunition.

The Defendant agrees that the United States may, at its option, forfeit such property through civil, criminal or administrative proceedings, waives any deadline or statute of limitations for the initiation of any such proceedings, and abandons any interest he may have in the property. The Defendant waives all statutory and constitutional defenses to the forfeiture and consents to the destruction of the firearms and ammunition.

14. **Waivers of Appeal and Collateral Attack**. The Defendant hereby waives the right to appeal any non-jurisdictional issues. This appeal waiver includes, but is not limited to, the Defendant's waiver of the right to appeal guilt or innocence, sentence and restitution, and the constitutionality

of the statutes to which the Defendant is pleading guilty. The parties agree, however, that excluded from this waiver is an appeal by Defendant of the substantive reasonableness of a term of imprisonment above **168** months. The Defendant also waives the right to petition under 28 U.S.C. § 2255 except based upon a claim of ineffective assistance of counsel, or upon future retroactive and substantive changes to the law.

The Defendant has discussed these rights with his attorney. The Defendant understands the rights being waived, and the Defendant waives these rights knowingly, intelligently, and voluntarily.

The United States agrees to waive its right to appeal any sentence, except the United States may appeal the substantive reasonableness of a term of imprisonment below **168** months' imprisonment.

15. **FOIA Requests.** The Defendant waives all rights to obtain, directly or through others, information about the investigation and prosecution of this case under the Freedom of Information Act and the Privacy Act of 1974, 5 U.S.C. §§ 552, 552A.

16. **Complete Agreement.** The Defendant acknowledges that he has read this plea agreement and has carefully reviewed each provision with his attorney. The Defendant further acknowledges that he understands and voluntarily accepts every term and condition of this plea agreement. This plea agreement, along with any agreement signed by the parties before entry of the

plea, is the entire agreement and understanding between the United States and the Defendant.

Dated: **6/29/2023**

        ANDREW M. LUGER
        United States Attorney

        BY: THOMAS CALHOUN-LOPEZ
        Assistant United States Attorney

Dated: June 29, 2023

        SHEVIRIO KAVIRION CHILDS-YOUNG
        Defendant

Dated: June 29, 2023

        MANVIR K. ATWAL
        Counsel for Mr. Childs-Young