UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA
Criminal No. 22-076 (KMM/TNL)

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | **POSITION OF THE** |
| | ) | **UNITED STATES** |
| v. | ) | **WITH RESPECT TO** |
| | ) | **SENTENCING** |
| JAVEYON DEMARIO TATE, | ) | |
| | ) | |
| Defendant. | ) | |

The United States of America, by and through its attorneys, Andrew M. Luger, United States Attorney for the District of Minnesota, and Thomas Calhoun-Lopez, Assistant United States Attorney, hereby submits this memorandum setting forth its position with respect to sentencing factors in this matter.

The United States asks the Court to sentence Defendant Javeyon Demario Tate to a term of imprisonment of 97 months, the low-end of his guidelines range as the United States now calculates it.[1]  Tate conspired with others to terrorize, beat, and rob commercial drivers who were trying to make

---

[1] The parties in the plea agreement reached a different conclusion as to the Defendant's guidelines calculations.  The United States now agrees that the guidelines as calculated by the Presentence Investigation Report are correct (with the exception of an adjustment under U.S.S.G. § 3B1.4, discussed in § I, *infra*).  The United States has consulted with the Defendant's counsel, who has indicated that the Defendant does not object to the United States adopting the revised guidelines, which are to his benefit.

a living and provide for their families.  The attacks were violent, wanton, and needlessly cruel.  Not content inflicting physical and psychological trauma to take from the driver's their money, phones, and vehicles, members of the conspiracy forced the drivers to provide passcodes to phones and bank accounts; members of the conspiracy then continued to steal money from the victims and even their families after the ordeal of the robbery was over.  A sentence of 97 months is reasonable and appropriate under the sentencing objectives of U.S. law.

## THE PRESENTENCE INVESTIGATION REPORT

### I.   The Government's Position Regarding the Guidelines.

a.   *Offense Level Calculations.*

As outlined in n.1, *supra*, the United States agrees with the guidelines as calculated by the Presentence Investigation Report (ECF No. 168 (PSR)), with one exception.

The United States agrees that, because the offense involved a machinegun, the base offense level is 18 pursuant to U.S.S.G. § 2K2.1(a)(5). (PSR ¶ 59.)  The United States agrees that, because the offense involved between eight and 24 firearms, four levels should be added pursuant to U.S.S.G. § 2K2.1(b)(1)(B).  (PSR ¶ 60.) The United States agrees that, because the offense involved a firearm with an obliterated serial number, the base offense level should be increased by an additional four levels pursuant to

U.S.S.G. § 2K2.1(b)(4)(B)(i).   (PSR ¶ 61.)   The United States agrees that, because the firearms were used in connection with another felony offense, the base offense level should be increased by an additional four levels pursuant to U.S.S.G. § 2K2.1(b)(6)(B).  (PSR ¶ 62.)

The United States contends that the base offense level should be increased by two levels pursuant to U.S.S.G. § 3B1.4 because the defendants in this case used minors to commit the crime.  The United States therefore respectfully objects to para. 64 of the PSR.  The parties agreed in the plea agreement that a person under the age of 18 was "used to commit the offense." (ECF No. 142 at ¶ 8.c.)  The United States respectfully requests that the Court accept the defendants' agreement that a minor was "used" in the offense.

With credit for acceptance of responsibility, the United States contends that the total offense level is 29.  In criminal history category II (PSR ¶ 85), the guideline range is 97–121 months' imprisonment.

b.     *Relevant Factor under 18 U.S.C. § 3553(a).*

The United States also contends that the PSR should reflect that victim drivers were uniformly of Somali or other African descent, and that their names clearly reflect that background.  This is a relevant fact because it indicates that members of the carjacking conspiracy targeted immigrant populations in their crime.

Uber and Lyft drivers come from diverse backgrounds and walks of life.

3

Victims of this conspiracy, however, were uniformly of African descent, and the majority of them were of Somali descent. The reasonable inference of this fact is clear: members of the conspiracy targeted what they considered to be a vulnerable immigrant population. This is a relevant fact for the Court to consider pursuant to 18 U.S.C. § 3553(a) in determining the sentence in this case.

## II.   **Tate Objection to the PSR.**

Tate objects to the assessment of four levels because the offense involved between eight and 24 firearms pursuant to U.S.S.G. § 2K2.1(b)(1)(B). (PSR A.4–A.5.) The United States opposes this objection.

As the PSR outlines, 14 firearms were seized in connection with this offense. (PSR ¶ 46.) Tate in his plea agreement admitted that he knowingly participated in a conspiracy to brandish and use firearms to commit these robberies. (ECF No. 142 at ¶ 2.) Tate is responsible for all acts and omissions of other members of the conspiracy that were "(i) within the scope of the jointly undertaken criminal activity, (ii) in furtherance of that criminal activity, and (iii) reasonably foreseeable in connection with that criminal activity." U.S.S.G. § 1B1.3(a)(1)(B). The adjustment is therefore appropriate.

## **ARGUMENT**

### **III.    The Appropriate Sentence in Light of 18 U.S.C. § 3553(a).**

In addition to determining the Defendant's Sentencing Guideline range (18 U.S.C. § 3553(a)(4)), this Court is required to assess the other applicable sentencing factors under Section 3553(a) of federal sentencing law. Those factors include the nature and circumstances of the offense; the history and characteristics of the defendant; the need for the sentence imposed to reflect the seriousness of the offense, to promote respect for the law, to provide just punishment for the offense, to afford adequate deterrence to criminal conduct, and to protect the public from further crimes of the defendant; the need to avoid unwarranted sentencing disparities; and the need to provide restitution to victims. 18 U.S.C. § 3553(a).

Pursuant to these factors, the United States requests the Court sentence the Defendant to a term of imprisonment of 97 months.

a.    *The Need for the Sentence Imposed to Reflect the Seriousness of the Offense and to Provide Just Punishment for the Offense.*

These crimes were extraordinary in their aggression, their greed, and their cruelty. The victims were hardworking men and women who were driving commercially to support their families. Members of the conspiracy lured the drivers to a preplanned location; when the drivers arrived, the conspirators brandished firearms and beat and pistol-whipped the drivers.

(PSR ¶¶ 13, 15–38.)  The conspirators demanded keys, wallets, and phones, and forced the drivers at gunpoint to unlock the phones and provide passcodes. (*Id.*)  The conspirators then used the passcodes to continue to victimize the drivers even after the robberies were over.  (*Id.*)  Shockingly, the conspirators even used the victims' phones and coerced information to victimize the drivers' family members.  (PSR ¶ 16.)

The trauma these victims underwent—the physical, emotional, and financial devastation—are incalculable.  The victim's accounts of the lingering damage from these crimes are heartbreaking.  (PSR ¶¶ 49–54.)

- One victim described the ordeal as "the most horrific day of [his] life"; he thought he was going to die and never see his family again. (PSR ¶ 49.)  He stopped working, and has been plagued by nightmares and panic attacks, as well as pain from his physical injuries.  (*Id.*)

- Another described nightmares, fear that the robbers will come back for him, the loss of his job, and alienation from loved ones. (PSR ¶ 51.)  He had been attending classes in-person at the University of Minnesota until this event—he reported that the robbers "destroyed" a part of his life.  (*Id.*)

- Still more victims reported a litany of terrible emotional effects, including anxiety, depression, nightmares, feeling unsafe, repeated memories of the crime, and loss of trust.  (PSR ¶¶ 52–54.)

The conspirators' crimes were not just dangerous, not just cruel and violent—they had a terrible human toll.  The conspirators devastated their victims.  The violence done to their sense of well-being, their sense of safety and security in the world, will last long after the physical injuries have healed

6

and the financial burdens are past.

And these crimes did not just affect victims. They contributed to a scourge of carjackings that made communities in Minnesota feel unsafe. The Minneapolis Police Department reported 600 carjackings in 2021—a crime the Department did not even use to track because the crime was "so rare." David Chanen, *Carjackings sweep through Twin Cities communities*, Star Tribune, Jan. 1, 2022, available at https://www.startribune.com/carjackings-sweep-through-twin-cities-communities/600131862/. Carjackings in November of 2020 were up 537% compared with November of 2019. Liz Sawyer, *'Staggering' surge in violent carjackings continues across Minneapolis*, Star Tribune, Dec. 2, 2020, available at https://www.startribune.com/staggering-surge-in-violent-carjackings-continues-citywide/573257391/. Beyond the devastating effect on victims, the crimes instilled fear in communities, and had an economic effect as people stayed inside and stores were shuttered.

The defendants' many crimes contributed to those 600 carjackings reported in 2021. A significant sentence is necessary to reflect the scope of this crime—the terrible cost to the victims, and to the public. A significant sentence is necessary to provide just punishment.

b.    *The Need for the Sentence Imposed to Afford Adequate Deterrence to Criminal Conduct and to Protect the Public.*

By the same token, a lengthy sentence is necessary to deter Tate and to protect the public from him.

These crimes showed a shocking indifference to human life.  The conspirators brandished firearms and assaulted drivers who were not resisting.  When drivers—under terrible stress and in fear for their lives—were slow to open applications or got passcodes wrong, conspirators would pistol-whip and further terrorize them.  The violence the conspirators employed was not only extreme but utterly gratuitous.

The inherent danger to human life was made all too clear in January of 2022, when an attempted robbery resulted in the death of one of Tate's accomplices.  (PSR ¶ 41.)

A significant sentence is necessary to impress upon Tate the seriousness of his actions.  It is necessary to finally and conclusively deter Tate from committing more robberies and to protect the public from his continuing offenses.

## **CONCLUSION**

In light of all the facts of the facts in this case, and pursuant to the sentencing objectives of 18 U.S.C. § 3553(a), the United States asks this Court to sentence Javeyon Demario Tate to a term of imprisonment of 97 months.

Date:  November 28, 2023

Respectfully Submitted,

ANDREW M. LUGER
United States Attorney


*s/ Thomas Calhoun-Lopez*

BY:  THOMAS CALHOUN-LOPEZ
Assistant U.S. Attorney
Attorney ID No. 480908DC